## APPEAL OF FORT WAYNE ENGINEERING & MANUFACTURING CO.

Docket No. 489.   Submitted March 26, 1925.   Decided November 6, 1925.

> Advances by a stockholder to a corporation, which are treated as accounts payable, upon which interest is credited, and which account is later exchanged for stock, may be included in invested capital only from the time the stock is issued therefor.

*J. Robert Sherrod, Esq.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before Ivins,[1] MARQUETTE, and GREEN.

This is an appeal from the determination of a deficiency in income and profits taxes for the year 1917 in the amount of $6,033.35. Only so much of said deficiency is in controversy as results from the exclusion from invested capital of amounts advanced by a stockholder to the taxpayer and claimed to constitute a paid-in surplus.

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of Indiana in 1908. Prior to its incorporation, one John Astrom had made application for letters patent covering certain inventions, and on the 18th day of October, 1907, made and entered into a certain agreement with Henry C. Paul, wherein, after reciting the patent application, the following is set forth:

WHEREAS, said John Astrom has requested Henry C. Paul, of Fort Wayne, Indiana, to test such devices, covered by such letters, to determine their value and it will be necessary for such purpose to expend about the sum of five thousand dollars ($5,000) and if such devices prove valuable, as determined by such tests, it will require the services of said Paul to form such corporation and to promote the manufacture and sale of such devices and also to procure a legal opinion of some attorney, of his selection, as to the patentability of said devices and whether the same are an infringement on any other patents for similar devices and in consideration of the aforesaid services and the risks assumed by the said Paul in advancing the money necessary to make such tests and in procuring such legal opinion and causing to be incorporated said proposed corporation said John Astrom has offered, on executing this contract,

---

[1] This decision was prepared during Mr. Ivins's term of office.

to sell, assign, transfer and deliver to said Paul an undivided two-thirds interest in and to all the inventions for which said patents are sought and in and to all said patents therefor, when granted, and to join in the formation of the corporation under the Laws of Indiana, relating to manufacturing and mining companies, with common stock of one hundred thousand ($100,000) dollars, and two hundred thousand ($200,000) dollars of preferred stock, which preferred stock shall provide for the payment of dividends at the rate of seven per cent per annum, payable semi-annually, which dividends shall be cumulative, and the said stock and dividends shall have preference in payment out of the income and assets of said corporation in preference to any payment on the common stock of said company, and the certificates therefor shall contain such terms and provisions therefor as the said Paul may determine, not in contravention of the laws of the State of Indiana, said Henry C. Paul to receive sufficient of said preferred stock, par value, to repay him for all monies advanced or expended in testing such devices to determine their value, attorney fees for legal opinion as to validity of patents and all expenses and fees connected with the incorporation of such corporation, * * *

The contract then sets out the following agreement, among others:

It is further agreed between the parties hereto, in consideration of the premises, that of said preferred stock said Henry C. Paul shall receive, as fully paid, an amount equal to all monies advanced and paid out by him for the purpose of manufacturing and installing said devices and making tests to determine their value and also of all other monies expended by Henry C. Paul in any way relating to said inventions or patents, for incorporating said corporation, including fees for certificate of incorporation and for legal opinion as to validity of patents and the balance of said preferred stock shall be sold and disposed of for the purpose of providing a working capital for said corporation.

Pursuant to said contract and prior to October 1, 1913, Paul advanced to the corporation $100,000, and on the latter date the said account of Paul was exchanged for $100,000 of preferred stock of the corporation.

During the period from 1913 to 1917, Paul made other advances to the taxpayer, which were credited to Paul in an account known as "H. C. Paul, Special Account," and at the beginning of 1917 this account showed a credit to Paul of $54,500.06. The cash journal shows this account to have been credited at intervals with interest.

On June 1, 1917, there was issued to Paul preferred stock of the corporation in the amount of $65,000, this amount being made up of $54,500.06 from the special account and $10,499.94 dividends for one and one-half years on the preferred stock issued in 1913. The proper entries were made on the books of the taxpayer under date of June 30, 1917.

In computing the invested capital for 1917 the Commissioner prorated the $54,500.06 for six months from June 30, 1917.

### DECISION.

The invested capital for the year 1917 should be computed in accordance with the foregoing findings of fact and the following

opinion. The amount of the deficiency will be settled on consent or on 10 days' notice, under Rule 50.

OPINION.

MARQUETTE: The question presented herein is whether the amounts credited to the special account of Paul on the taxpayer's books for advances made between 1913 and 1917 constituted a paid-in surplus. In other words, whether advances were made under the terms of the contract above set forth, whereby it is claimed Paul was obligated to accept preferred stock therefor; or constituted an indebtedness of the taxpayer, which became capital upon the exchange thereof for stock.

The Board has had occasion to consider questions similar to the present one in *Appeal of Warren-Lamb Lumber Co.*, 1 B. T. A. 786, and in *Appeal of Middleton Compress & Warehouse Co.*, 1 B. T. A. 1145, and the rule may be adduced from those decisions: (1) That where advances are made to a corporation for which stock is later issued, without other evidence, they become invested capital only from the time the stock is issued therefor; and (2) that where advances are made with the express understanding that they are to be additions to capital for which stock is to be issued, they become invested capital from the time paid in. The facts herein bring this appeal between the two rules stated, and we must determine the intent of the parties from the contract and the attendant circumstances as disclosed by the evidence. We are not advised of the nature or purpose of the advances and are unable to say whether they were within the terms of the contract. The evidence discloses, however, that the advances were not treated by the taxpayer as capital but were placed on its books as accounts payable and that interest was credited from time to time to this account. This would indicate that the parties themselves considered the amounts as borrowed money rather than as contributions to capital. If they were paid-in surplus, the taxpayer would not have credited interest on the amount of the advances. The evidence does not satisfy us that the advances were made under the contract or that Paul was obligated to accept preferred stock in the corporation in exchange therefor.

The Commissioner erred, however, in prorating the advances exchanged for preferred stock from June 30, 1917. The evidence discloses that the stock was issued on June 1, 1917, in exchange for the amounts advanced, but the book entries recording the transaction were made under date of June 30, 1917. As has been frequently held, the facts and not book entries must control, and the amount of $54,500.06 should be prorated from June 1, 1917, and not from June 30, 1917. *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179; *Douglas* v. *Edwards*, 298 Fed. 229, 234; *Appeal of Even Realty Co.*, 1 B. T. A. 355.